**Paul G. CURTIS and Mary Curtis, Plaintiffs–Appellees,**

v.

**NEVADA BONDING CORPORATION, Douglass Financial Corporation, and Does I–XX, inclusive, Defendants–Appellants.**

**No. 93–16981.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 16, 1995.

Decided April 28, 1995.

---

1024

Christopher R. Hooper, Lionel Sawyer & Collins, Reno, NV, for defendants-appellants.

Robert F. Enzenberger, Haefner & Enzenberger, Reno, NV, for plaintiffs-appellees.

Before FLETCHER, REINHARDT, and NOONAN, Circuit Judges.

FLETCHER, Circuit Judge:

Defendants Nevada Bonding Corporation and Douglass Financial Corporation appeal the district court's remand to the Nevada state district court of state law claims brought by Paul and Mary Curtis. The district court determined that it had subject matter jurisdiction over the Curtises' claims pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., and that ERISA preempted some but not all of the Curtises' state law claims. We hold that the district court lacked subject matter jurisdiction, and we vacate the district court's judgment and remand to the district court with instructions to remand the case to the state court.

I

Defendant Nevada Bonding Corporation ("NBC") is a retail bond agency licensed to write bail bonds through defendant Douglass Financial Corporation ("DFC"). According to the Curtises' complaint, Paul Curtis met with representatives of DFC and NBC in May of 1992 to discuss a potential employment opportunity with NBC. Mr. Curtis indicated that one of his principal objectives in obtaining employment was to secure health and life benefits as soon as possible. After some negotiating, Mr. Curtis accepted an offer to begin working for NBC immediately. The Executive Vice President of DFC promised Mr. Curtis that his health and life benefits would take effect on June 1, 1992. Mr. Curtis was not informed how his new employers intended to secure insurance coverage or how they usually provided coverage to their employees.

In fact, the defendants' usual means of providing health and life benefits to NBC employees was through a group insurance policy purchased from Employers Health Insurance. The parties agree that NBC had a plan governed by ERISA to provide health and life benefits and that the Employers Health policy was part of that ERISA plan. Under the terms of the Employers Health policy, a new employee did not become eligible to receive benefits until the first day of the month following his first ninety days of employment. Thus, to fulfill their promise to Mr. Curtis, the defendants were obliged to procure an individual policy or make some alternative arrangement to provide benefits for Mr. Curtis from June 1, 1992 until he became eligible for participation in the ERISA plan on September 1, 1992.

When the Curtises incurred some minor medical expenses after June 1, they learned that the defendants had not in fact procured insurance coverage as promised. Reminded of their promise, the defendants reimbursed the Curtises for the medical expenses. Meanwhile, on August 12, 1992, Employers Health notified the Curtises that, because Mrs. Curtis currently was pregnant, Mr. Curtis was ineligible for coverage but could reapply after the child's birth. In late August, after receiving notice from the insurer that he was ineligible for current participation in the Employers Health policy, Mr. Curtis was informed by his treating physicians that he had developed a malignant tumor in his cervical spine and that significant medical expenses would be incurred. Informed of Mr. Curtis's diagnosis, the defendants ceased reimbursing the Curtises for incurred medical expenses. When Mr. Curtis demanded that the defendants fulfill their promise, the defendants refused and eventually terminated Mr. Curtis's employment with NBC.

On February 10, 1993, the Curtises filed a complaint in the Nevada state district court against NBC and DFC alleging breach of contract, negligence, breach of the covenant of good faith and fair dealing, and fraudulent misrepresentation. The heart of the Curtises claims was that, in order to obtain Mr. Curtis as an employee, the defendants promised to provide insurance coverage for Mr. Curtis starting June 1, 1992, knowing that the Employers Health policy would not cover Mr. Curtis until at least September 1, 1992. Allegedly relying on the defendants' representation, the Curtises did not obtain insurance from other potential sources. Had the

defendants obtained insurance coverage as they allegedly promised, Mr. Curtis would have been insured when he was diagnosed with cancer; instead, he was left uninsured.

NBC and DFC removed the action to federal district court and moved for summary judgment on the grounds that ERISA preempted the Curtises' claims and that the Curtises were not entitled to benefits under the terms of the Employers Health policy. The Curtises conceded that they could not recover benefits under the defendants' ERISA plan, but opposed the motion for summary judgment and moved to remand to the state court because the district court lacked subject matter jurisdiction and their claims did not "relate to" an ERISA plan and, therefore, were not preempted.

The district court, apparently believing that it had subject matter jurisdiction due to the existence of an ERISA plan, granted summary judgment in favor of the defendants to the extent that the Curtises' claims alleged that the parties had agreed to modify an existing ERISA plan or related in any other way to the Employers Health group policy. The district court remanded the Curtises' claims to the state court, however, regarding "one small area where [Mr. Curtis] appears to be alleging that [the defendants] fraudulently represented to him that he'd be covered with health and life insurance upon taking employment and he was not, period." Accordingly, the district court granted summary judgment in favor of the defendants on the Curtises' breach of contract and negligence claims, but remanded the Curtises' claims for fraudulent misrepresentation and breach of the covenant of good faith and fair dealing.

## II

Although the Curtises objected to removal to the federal district court on the ground that the district court lacked subject matter jurisdiction, they appear to argue on appeal that the district court appropriately exercised jurisdiction over the case and correctly determined that their state law claims of fraudulent misrepresentation and breach of the covenant of good faith and fair dealing survive ERISA preemption. Nevertheless, "it is this court's duty to see to it that the District Court's jurisdiction, defined and limited by statute, is not exceeded." *Freeman v. Jacques Orthopaedic & Joint Implant Surgery Medical Group,* 721 F.2d 654, 655 (9th Cir.1983). To determine whether federal subject matter jurisdiction extends to the Curtises' suit, we must determine whether an "employee welfare benefit plan" as defined by ERISA exists, and whether the Curtises have standing to bring a civil suit to enforce ERISA. *See Peterson v. American Life & Health Insurance Co.,* 48 F.3d 404, 408 (9th Cir.1995).

### A

The parties agree that the group policy purchased by the defendants from Employers Health was the means of providing benefits to NBC's employees and is part of an employee welfare benefit plan governed by ERISA. They vigorously debate, however, whether the Curtises have standing to bring a claim for benefits under the plan, and, if not, whether ERISA may nevertheless preempt their state law claims. We address the latter dispute first.

The defendants argue that federal subject matter jurisdiction pursuant to ERISA and, therefore, ERISA preemption, may extend to a plaintiff's state law causes of action even if the plaintiff lacks standing to enforce ERISA. Their argument is foreclosed by *Freeman v. Jacques Orthopaedic and Joint Implant Surgery Medical Group, Inc.,* 721 F.2d 654, 655 (9th Cir.1983), where we held that federal courts lack subject matter jurisdiction if the plaintiff in an action for benefits owed under an ERISA plan lacks standing to bring a civil suit enforcing ERISA under 29 U.S.C. § 1132(a)(1)(B). Although the defendants argued in their brief that we should reexamine *Freeman* in light of Supreme Court decisions interpreting ERISA preemption broadly,[1] we have since

---

1. See, e.g., *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Shaw v. Delta Air Lines; Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

reiterated our holding in *Freeman* that a plaintiff's standing under section 1132(a)(1) is a prerequisite to ERISA jurisdiction. *See Peterson,* 48 F.3d at 409; *Harris v. Provident Life and Accident Insurance Co.,* 26 F.3d 930 (9th Cir.1994).

■ Moreover, without standing to enforce ERISA, there can be no ERISA preemption. As we stated in *Harris,*

[I]t would be contradictory to rule that state law claims are preempted where the court has already held that the same plaintiffs may not assert a claim under ERISA because they [lack standing] ... Unlike the Chesire [sic] Cat, one cannot have the smile of preemption without the stripes of participation....

*Id.* at 934 (internal citations and quotations omitted).

■ Having established that a plaintiff's standing to enforce ERISA is a prerequisite to both subject matter jurisdiction and ERISA preemption, we now turn to the question of whether the Curtises have standing to bring a civil suit under ERISA. A civil action under ERISA may be brought by a "participant" in or "beneficiary" of an ERISA plan. 29 U.S.C. § 1132(a)(1). A "participant" is "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of" an ERISA plan. *Id.* § 1002(7).[2]

■ Whether a plaintiff is a plan participant is determined as of the time he files the lawsuit. *Harris,* 26 F.3d at 933; *Olson v. General Dynamics Corp.,* 960 F.2d 1418, 1422· (9th Cir.1991), *cert. denied,* 504 U.S. 986, 112 S.Ct. 2968, 119 L.Ed.2d 588 (1992). When the Curtises filed this action, the defendants had already terminated Mr. Curtis's employment with NBC. A former employee qualifies as a participant under ERISA if he has "a reasonable expectation of returning to covered employment or a colorable claim to vested benefits." *Firestone Tire & Rubber*

*Co. v. Bruch,* 489 U.S. 101, 117, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989).

*Harris* establishes that Mr. Curtis is not a participant in the Employers Health policy. In *Harris,* the plaintiffs, a husband and wife, alleged that the husband's former employer represented that the husband and his dependents would be covered under the employer's group health insurance policy as of the date of the husband's first sale for the employer. After the husband's first sale, the plaintiffs incurred substantial medical expenses, believing that the employer's health plan would cover them. In fact, the plaintiffs' coverage had not yet begun, and the insurer denied the medical claims. 26 F.3d at 931.

The plaintiffs filed in state court state law causes of action for misrepresentation and breach of contract against the husband's employer and the employer's ERISA plan provider. The defendants removed the case to federal court, and the plaintiffs amended their complaint to allege an additional claim of breach of fiduciary duty under ERISA. *Id.* at 932. The district court granted summary judgment in favor of the defendants on all claims.

On appeal, we held that the husband plaintiff had neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits. Accordingly, he was not a participant as defined by ERISA, and, therefore, the district court lacked jurisdiction to hear the plaintiffs' ERISA claim for breach of fiduciary duty and the plaintiffs' state law claims were not preempted. *Id.*

■ We find this case to be indistinguishable from *Harris.* Like the plaintiff in *Harris,* Mr. Curtis has no reasonable expectation of returning to covered employment in light of the defendants' termination of his employment. He also has no colorable claim to benefits under the Employers Health group policy because he was diagnosed with cancer before he was even eligible for participation

---

2. In this case, we need to address only whether Mr. Curtis is a participant. ERISA defines a beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). At no point did the terms of the Employers Health plan designate either Mr. or Mrs. Curtis as beneficiaries, so the only means by which either of them could constitute a beneficiary would be if Mr. Curtis were deemed a participant who designated his wife a beneficiary.

in the plan under the terms of the group policy.

Relying on our decision in *McLeod v. Oregon Lithoprint Inc.*, 46 F.3d 956 (9th Cir. 1995), the defendants maintain that Mr. Curtis is a participant. The plaintiff in *McLeod* filed an ERISA claim against the administrator of her employer's ERISA plan, alleging that the administrator breached its fiduciary duty to her by failing to notify her that she had become eligible to apply for cancer insurance coverage. The plaintiff did not become aware of her eligibility until *after* she was diagnosed with cancer. *Id.* at 957.

We held that the plaintiff was a participant, emphasizing that the plaintiff "was eligible *to apply* for benefits ..., and that she was eligible *to receive* benefits, had she applied for them by the time she was diagnosed with cancer." *Id.* at 958 (emphasis in original). Thus, the plaintiff had a colorable claim that she would prevail in a suit for benefits resulting from an alleged breach of fiduciary duty. *Id.* at 958–59.

The defendants' reliance on *McLeod* is misplaced. Although the fact that Mr. Curtis was never issued an actual policy under the Employers Health plan would not preclude him from being a participant, *id.* at 958, Mr. Curtis, unlike the plaintiff in *McLeod*, never became *eligible* to receive benefits under the ERISA plan prior to his diagnosis with cancer and so does not have a colorable claim that he will prevail in a suit for benefits under ERISA.

**B**

The defendants argue that Mr. Curtis has standing to pursue a civil suit under ERISA even though he is not a participant in the Employers Health plan. They urge us to hold that their oral promise to provide benefits to Mr. Curtis as of June 1, 1992 created an employee welfare benefit plan, separate from the Employers Health group policy, and that Mr. Curtis was a participant in that ERISA plan.

ERISA's coverage provision extends to "any plan, fund, or program" established or maintained by an employer for the purpose of providing employee welfare benefits to its employees and their beneficiaries. 29 U.S.C. § 1002(1). The precise definition of a "plan, fund, or program" is less than well defined, but we have observed that ERISA coverage extends to an arrangement sufficiently specific to "enable a reasonable person to 'ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.'" *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1504 (9th Cir.1985) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982) (en banc)).

The defendants do not allege any facts suggesting the existence of a "plan, fund, or program" other than their promise to provide insurance coverage for Mr. Curtis beginning on June 1 and their subsequent reimbursement to him of minor medical expenses. Such an ad hoc arrangement does not come close to meeting *Donovan*'s definition of an ERISA plan. Although our court has not yet determined the minimum requirements for establishing the existence of an ERISA plan, we need not determine in this case whether an arrangement to provide employee benefits may fall within the scope of ERISA even if it does not meet the *Donovan* standard. The defendants' only argument for extending ERISA to their promise to Mr. Curtis is that ERISA applies whenever an employer promises to or arranges to provide ERISA–type benefits for an employee. We have previously held, however, that "the mere allegation that an employer ... ultimately decided to provide an employee welfare benefit is not enough to invoke ERISA's coverage." *Scott*, 754 F.2d at 1503–04. Thus, even under the most minimal definition imaginable, the defendants' oral promise to Mr. Curtis did not create an ERISA plan.

**III**

The defendants' promise to provide insurance coverage to Mr. Curtis beginning on June 1, 1992 and their subsequent reimbursement to him for minor medical expenses did not create an ERISA plan. Although the parties agree that the Employers Health group policy was the means for providing the employee welfare benefits under the plan governed by ERISA and defined the benefits provided and the entitled beneficia-

ries, Mr. Curtis was not a participant in that ERISA plan and therefore does not have standing to bring a civil suit for benefits under the plan. Accordingly, the district court lacked subject matter jurisdiction over the Curtises' action, and ERISA does not preempt the Curtises' state law claims. The district court's judgment is vacated, and we remand the case to the district court with instructions to remand it to the state court. *See* 28 U.S.C. § 1447(c).

VACATED, REMANDED.