**Gary PEARSON and Cynthia
Pearson, Plaintiffs,**

v.

**PRUDENTIAL HEALTH CARE PLAN
OF CALIFORNIA, INC., et al.,
Defendants.**

**No. CIV–S–94–1255 DFL PAN.**

United States District Court,
E.D. California.

April 10, 1996.

George Ray Robertson, Stockton, CA, for the Pearsons.

David A. Riegels, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, CA, for Prudential.

David Scott Glass, Citrus Heights, CA, for Omni.

## AMENDED MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

Plaintiffs Gary and Cynthia Pearson ("the Pearsons") brought suit to recover benefits under health insurance and health maintenance plans provided by defendants Prudential Health Care Plan of California, Inc. ("Prucare") and Omni Healthcare, Inc. ("Omni"). The parties have made cross-motions for summary judgment.[1]

---

1. The court has modified its memorandum of opinion and order filed February 21, 1996, in light of Prucare's motion for reconsideration.

## I. Factual Background

Beginning in December, 1992 the Pearsons were covered under a group health plan issued by Prucare to Gary Pearson's employer, Mepco Label Systems ("Mepco"). On March 26, 1993 Mepco canceled its policy with Prucare effective March 31, 1993. Mepco then entered into a contract with Omni, under which the Pearsons were covered effective April 1, 1993.

Cynthia Pearson visited the emergency room at Dameron Hospital in Stockton, California for labor pains on March 31, 1993. She was sent home that same evening. On the following day, she returned to Dameron, was admitted, and delivered her baby, Christopher Pearson. Due to complications in the delivery, she remained in Dameron for four days, and Christopher remained in Dameron's neonatal unit until April 30, 1993. The bill for Cynthia and Christopher's stay at Dameron totaled $191,443.17.

Both Prucare and Omni denied coverage for the hospital expenses. Prucare denied coverage because the Pearsons' expenses were incurred after March 31, 1993—the effective date of termination of Mepco's contract with Prucare. Omni, while conceding that the Pearsons were covered under the policy it provided to Mepco effective April 1, 1993, denied coverage because Dameron is not a provider within the Omni plan.

Dameron obtained a judgment against the Pearsons for the $191,443.17 in hospital charges plus interest and attorney's fees. The Pearsons then filed this action in California Superior Court for the County of San Joaquin. Prucare removed the action to this court on the basis that the Pearsons' state-law contract claims were preempted by ERISA. The Pearsons did not object to the removal, but instead amended their complaint to state a claim for breach of contract under ERISA. These motions followed.

## II. Prucare's Liability

Although the Pearsons did not object to Prucare's removal of this action, the court must nonetheless address whether federal question jurisdiction exists such that removal of the action was proper. *Harris v. Provident Life and Accident Insurance Co.*, 26 F.3d 930, 932 (9th Cir.1994); *O'Halloran v. University of Washington*, 856 F.2d 1375, 1379 (9th Cir.1988) ("Procedural defects in the removal of an action may be waived by the failure to make a timely objection before the case proceeds to the merits ... [D]efects going to the subject matter jurisdiction of the court cannot be waived and may be raised at any time") (quotations omitted). In determining the existence of removal jurisdiction based upon a federal question, the court must look to the complaint as of the time the removal petition was filed; jurisdiction is based on the complaint as originally filed and not as amended. *O'Halloran*, 856 F.2d at 1379.[2]

The Pearsons' original complaint included only claims for breach of contract and bad faith denial of a contract under California law. Prucare removed this action on the basis that the federal court had original jurisdiction over the Pearsons' claims because those claims arose under ERISA. ERISA renders state-law contract and tort claims removable if those claims (1) "relate to [an] employee benefit plan" under 29 U.S.C. § 1144(a), and (2) come within ERISA's civil enforcement provisions found at 29 U.S.C. § 1132(a). *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 62–66, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987).

Under ERISA's civil enforcement provisions, a civil action may be brought by a plan participant, beneficiary, fiduciary, or by the Secretary of Labor. 29 U.S.C. § 1132(a); *Harris*, 26 F.3d at 933. A federal court lacks subject matter jurisdiction to hear a private party ERISA civil action brought by a person who is not a participant, beneficiary or

---

**2.** This rule is subject to an exception when a plaintiff does not object to removal or fails to appeal a denial of remand and the case has been decided on the merits. In such a case, the issue is whether subject matter jurisdiction existed had the case been filed in the posture it had at the time of the entry of final judgment. *See O'Halloran*, 856 F.2d at 1379 n. 2. However, because the summary judgment motions now before the court have yet to be decided, this exception to the rule does not apply here.

fiduciary of the plan. *Curtis v. Nevada Bonding Corp.*, 53 F.3d 1023, 1027 (9th Cir. 1995); *Harris*, 26 F.3d at 933.

■ A plaintiff's status as participant must be decided as of the time of filing suit. *Harris*, 26 F.3d at 933. A plaintiff is a "participant" if, at the time of suit, plaintiff is a current or former employee "who is or may become eligible" for benefits under the plan on which the claim is made. 29 U.S.C. § 1002(7); *Firestone Tire & Rubber, Inc. v. Bruch*, 489 U.S. 101, 117–19, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989).[3] The relevant "plan" for the purpose of determining whether the Pearsons were plan participants and beneficiaries is the health insurance contract that Mepco purchased from Prucare (the "Prucare Plan").[4] Thus, the court has jurisdiction to hear the Pearsons' ERISA claims against Prucare only if Gary Pearson is a "participant" of the Prucare Plan within the meaning of section 1132(a).[5]

Current employees are "participants" if at the time of suit they are either covered by the plan, or reasonably expect to be so in the future. *Bruch*, 489 U.S. at 117–19, 109 S.Ct. at 958. The Prucare plan was terminated March 31, 1993. At the time this suit was filed on April 8, 1994, Gary Pearson was not currently covered under the Prucare plan, and did not have any reasonable expectation of becoming so in the future.

■ A plaintiff who is no longer in employment covered by the relevant plan at the time suit is filed may nonetheless be deemed a "participant" for purposes of section 1132(a) if he has either "a reasonable expectation of returning" to employment covered by that plan, or "a colorable claim to vested benefits" under that plan. *Id.* Again, because the Prucare plan was canceled before Gary Pearson filed suit, he had no "reasonable expectation" of returning to employment covered by the Prucare plan. Therefore, in order to properly be deemed a "participant" under section 1132(a), Gary Pearson must have a "colorable claim to vested benefits" under the Prucare Plan. *See, e.g., Nishimoto v. Federman–Bachrach & Associates*, 903 F.2d 709, 714 (9th Cir.1990) (former employ-

3. Section 1002(7) specifically defines "participant" as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ...." Under an overly literal reading of this provision, a plaintiff would have standing to sue for benefits under an ERISA plan so long as he was or could become eligible for benefits under that *or any other* ERISA plan, even that of a different employer. Thus, a plaintiff who is a former employee of employer "A" and a current employee of employer "B" would have standing to sue for benefits under employer A's ERISA plan solely by virtue of his being eligible to receive benefits under employer B's ERISA plan. However, this reading of section 1002(7) would render virtually meaningless the standing limitations of section 1132(a); Congress could not have intended such a result. The more natural reading requires that a plaintiff be a "participant" with respect to the particular ERISA plan on which he makes his claim.

4. Prucare contends that the insurance policy it provided was merely the funding vehicle for the "plan" that Mepco had created for its employees. Under Prucare's analysis, the ERISA "plan" continued in effect after Mepco canceled the Prucare policy because Mepco immediately thereafter purchased the Omni policy. However, Prucare concedes that there is no evidence of any plan documents, obligations or organization apart

from the two insurance policies. Thus, during the effective period of the Prucare plan, there was no evidence of a Mepco "plan" separate from the policy that comprised the plan. Because the plan had its existence by virtue of, and was embodied solely in, the policy of insurance purchased from Prucare, the policy is "the plan" for purposes of this analysis. *See Swint v. Protective Life Insurance Co.*, 779 F.Supp. 532, 550 n. 39 (S.D.Ala.1991) ("Where, as here, the Plan consists solely of a group insurance policy purchased by the employer and the sole Plan documents consist of the insurance contract itself ... the distinction between the Plan and the Policy becomes merely abstract and, ultimately, loses all practical and legal effect"); *see also Kunin v. Benefit Trust Life Insurance Co.*, 910 F.2d 534, 539 (9th Cir.1990) ("The group health and medical policy that covers [plaintiff] is an 'employee welfare benefit plan' as defined by ERISA"); *Rice v. Panchal*, 65 F.3d 637, 638 (7th Cir.1995) ("[the employer] provides its employees with welfare benefits pursuant to an ERISA welfare benefits plan ... [t]he Plan is a group insurance contract issued by Prudential"). The cases cited by Prucare in its reconsideration motion do not address this question and thus do not counsel a different result.

5. Because they were covered under the plan as dependents of Gary Pearson, the status of Cynthia and Christopher Pearson as beneficiaries depends upon Gary Pearson's status as plan participant.

ee a "participant" because at time she filed suit she had colorable claim to vested benefits under the pension plan). But Gary Pearson has no such claim.

■ The Pearsons' estoppel cause of action is not a "colorable claim to vested benefits" because it seeks damages caused by induced reliance, rather than a "benefit" under the plan. *See Harris*, 26 F.3d at 933 (former employee's fraud claim does not make him a "participant" because it seeks reliance damages, rather than a "benefit under the plan") (*quoting Freeman v. Jacques Orthopaedic & Joint Implant Surgery Medical Group*, 721 F.2d 654, 656 (9th Cir.1983)).

Moreover, the Pearsons' contract claim for benefits under the plan is not a "colorable" one. Mepco terminated its employees' coverage under the Prucare Plan effective March 31, 1993. The Pearsons acknowledge that Mepco sent what purported to be written notice of cancellation of the policy effective March 31, 1993 on or about March 26, 1993. The plan specifically provided that Mepco could write to Prucare requesting that the policy be cancelled at the end of any monthly premium payment period; cancellation would be effective "on the date requested" by Mepco. *See* Group Contract (Exh. "A" to Crawford Dec.), "General Rules" section "E", pg. (1–3)B. The Pearsons' claim that thirty-days' written notice was required before cancellation is not supported by the plain language of the plan. Thus Mepco's cancellation of the Prucare Plan was effective March 31, 1993.

Because the Prucare Plan was not in effect when the Pearsons incurred the expenses at Dameron during April of 1993, the Pearsons have no "colorable claim to vested benefits" under that plan. *See Curtis*, 53 F.3d at 1027–28 (no colorable claim to vested plan health benefits when plaintiff was diagnosed with the relevant medical condition before he became a participant in the ERISA plan).[6] In the absence of a showing that Gary Pearson was either in covered employment when suit was filed, had a reasonable expectation of returning to covered employment, or had a colorable claim to vested benefits under the Prucare Plan, the court lacks jurisdiction to hear the Pearsons' ERISA claims. *Id.; see also Harris*, 26 F.3d at 933. Accordingly, removal of this action was improper. *Id.*

■ Upon finding that a case was improperly removed, a district court ordinarily would remand the action under 28 U.S.C. § 1447(c). *See Nishimoto*, 903 F.2d at 714. However, Prucare contends that the Pearsons' state-law claims are preempted by ERISA because they "relate to" an employee benefits plan. *See* 29 U.S.C. § 1144(a). If Prucare is correct that the state-law claims are preempted, those claims should not be remanded, but rather must be dismissed. However, because the Pearsons are not plan participants or beneficiaries within the meaning of section 1132(a), their state-law claims cannot be preempted under section 1144(a). *Curtis*, 53 F.3d at 1027 ("Without standing to enforce ERISA, there can be no ERISA preemption"); *Harris*, 26 F.3d at 934 ("[I]t would be contradictory to rule that state law claims are preempted where the court has already held that the same plaintiffs may not assert a claim under ERISA because they are not 'participants' in the ERISA plan") (quoting *Deller v. Portland Gen. Elec. Co.*, 734 F.Supp. 916, 918 (D.Or.1990)).[7] There-

---

6. Prucare contends that participant status is established because plaintiffs pled in their complaint that they had a claim to vested benefits. However, subject-matter jurisdiction depends upon the plaintiffs having an *actual* colorable claim at the time of filing suit, and cannot be based merely upon plaintiffs' unfounded allegations. Further, Prucare attempts to distinguish *Curtis* and *Harris* on the basis that in each of those cases the claimant was a former employee and not a current employee as here. This distinction is not important. Gary Pearson is in the same position as a former employee because he is no longer a participant in the plan as to which he makes a claim. *See supra* notes 3 and 4.

7. Prucare relies upon *Greany v. Western Farm Bureau Life Insurance Co.*, 973 F.2d 812 (9th Cir.1992) to support its argument that the Pearsons' state-law claims are preempted by ERISA. In *Greany*, the court found preempted the plaintiff's claim that his employer had acted negligently in processing his request for post-termination conversion health insurance, after the plaintiff's coverage under an ERISA health benefits plan had ceased. The court held that the plaintiff's claim was in fact a claim for breach of the employer's duty under ERISA to provide such conversion benefits. *Id.*, at 818. As such, the court concluded, the state-law claim "relates to an ERISA group plan" and is preempted under

fore, the court must order this action remanded under 28 U.S.C. § 1447(c). *Curtis,* 53 F.3d at 1029.

## III. Omni's Liability

The Pearsons sue Omni for breach of its contractual obligation to pay for the services provided to the Pearsons by Dameron.[8] All parties agree that at the time Cynthia Pearson was admitted to Dameron hospital on April 1, 1993, the Pearsons were covered under the terms of Mepco's health care contract with Omni. Omni contends, however, that it is not liable for the Pearsons' expenses because Dameron hospital is not a member of the Omni plan, and because the Pearsons' claim for benefits does not fall within the exceptional circumstances under which Omni will cover services rendered by non-member providers.

An action may be brought by an ERISA participant or beneficiary "to recover benefits due him under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).[9] Under the terms of the Omni plan, Omni will generally cover only those expenses incurred at Omni-approved hospitals. *See* Ex. "A" to Maisel Dec. at 3. However, the plan provides for exceptions when a plan participant or beneficiary receives treatment from a non-member provider for a life-threatening emergency, or when Omni pre-authorizes the use of a non-member provider. *Id.* The Pearsons do not contend that Dameron was an Omni-approved provider, or that Omni pre-authorized the treatment Cynthia and Christopher received at Dameron. They do appear to argue, however, that the treatment received at Dameron was for a life-threatening emergen-

cy, and thus was a covered expense under the Omni plan.

The Omni plan defines "life-threatening emergency" as a situation in which "in the opinion of [Omni], the time it would take to contact [the patient's] Primary Physician would seriously jeopardize [the patient's] health." Ex. "A" to Maisel Dec. at 4. The plan provides that Omni will cover expenses at non-approved hospitals for such emergencies "until [the patient's] condition permits safe transfer to [an approved] facility." *Id.* The plan further provides that, in the case of such emergency treatment in a non-approved facility, the patient is to notify his or her Omni physician "within 48 hours of seeking care or as soon as [the patient is] reasonably able." *Id.*

Omni concluded that Cynthia Pearson's delivery of her baby on April 1, 1993 and the subsequent complications did not constitute "life-threatening" emergencies under the terms of the Omni plan, and that Christopher Pearson could have been transferred to an Omni-approved hospital shortly after his birth. Omni P & A at 8. Omni has submitted a declaration from Doctor Harvey Goodman, M.D., Vice–President for Medical Affairs for Omni, in support of these conclusions. *See* Goodman Dec. at 2–3.

■ The Omni plan vests Omni with the discretion to interpret and construe the plan's "life-threatening emergency" provision. *See* Ex. "A" to Maisel Dec. at 4 ("A life-threatening emergency exists when, in the opinion of [Omni], the time it would take ..."); *see Bogue v. Ampex Corp.,* 976 F.2d 1319, 1324 (9th Cir.1992) (finding that similar language conferred discretion). For that

---

section 1144(a). *Id.* While the *Greany* court did not address the issue of the plaintiff's "participant" status under section 1132(a)(1), it appears that the plaintiff in that case could properly be deemed a "participant" because he had a colorable claim to vested conversion benefits under the employer's ERISA plan. *See id.* at 817. Because the Pearsons make no claim for conversion benefits, and because there is no evidence that the Pearsons had any right to such benefits under the Mepco/Prucare plan, *see* 29 U.S.C. § 1162(2)(D) (plan need not make conversion benefits available once beneficiary becomes eligible for full coverage under another plan), *Greany* is readily distinguishable.

8. Omni was added as a defendant when the Pearsons amended their original complaint after removal to this court. Although the court has determined that removal of the action against Prucare was improper, it will treat the claim against Omni as a separate action to recover benefits under the Mepco–Omni ERISA plan, over which it has original jurisdiction under ERISA. There is no question that Gary Pearson is a participant in the Omni plan.

9. The Pearsons do not dispute that the contract between Mepco and Omni is governed by ERISA.

reason, Omni's determination that Cynthia Pearson's condition, and that of her baby, were not "life-threatening" will not be disturbed unless it constituted an abuse of discretion. *Bogue*, 976 F.2d at 1324. However, because Omni acted in the capacity of plan administrator *and* insurer with respect to the Pearsons' claim for benefits, the court must "take into consideration any conflict of interest in looking for an abuse of discretion." *Id.* at 1325.

The Pearsons have introduced no evidence to contradict Omni's conclusion that the situation surrounding Christopher Pearson's birth was not a qualifying "life-threatening emergency." Instead, they argue that they were unable to notify Omni within 48 hours of Cynthia's admission to Dameron because they did not even know they were covered under the Omni plan at that time. *See* Pl.'s Opp. at 2–3.[10] The Pearsons' argument misses the point. The notification provision is only a limitation on Omni's liability for expenses incurred at non-approved facilities for life-threatening emergencies, it does not itself confer any coverage upon plan participants or beneficiaries in the absence of such an emergency. Because the Pearsons have introduced no evidence to indicate that Omni abused its discretion when it determined that Cynthia Pearson's condition was not life-threatening, Omni's conclusion must be affirmed.

The Pearsons offer no other theory under which Omni could be held liable for their medical expenses incurred at Dameron.[11] Accordingly, Omni is entitled to summary judgment.

## IV. Order

For the foregoing reasons, the court orders the following:

1. The Pearsons' ERISA claims against Prucare are DISMISSED and the Pearsons' action against Prucare is REMANDED;

2. Omni's motion for summary judgment is GRANTED;

3. The Pearsons' motions for summary judgment against Prucare and Omni are DENIED; and

4. Prucare's motion for reconsideration is DENIED.

IT IS SO ORDERED.

---

10. There appears to be a factual dispute as to when the Pearsons became aware that their coverage under the Omni plan had taken effect.

11. The Pearsons do point to a provision in the California Health and Safety Code that regulates replacement health insurance coverage. *See* Cal. Health & Safety Code § 1399.63. However,

even assuming that this provision would otherwise apply to Omni's denial of coverage, its application to this health plan is preempted by ERISA. *See Hewlett–Packard v. Barnes*, 425 F.Supp. 1294 (N.D.Cal.1977), *aff'd* 571 F.2d 502 (9th Cir.1978).