**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JACK C. LEESON,
                    *Plaintiff-Appellant,*

                    v.

TRANSAMERICA DISABILITY INCOME
PLAN,
                    *Defendant-Appellee.*

No. 10-35380

D.C. No.
2:04-cv-00471-RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Submitted January 23, 2012*

Filed January 23, 2012

Before: Betty B. Fletcher, M. Margaret McKeown, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

Steven Krafchick, Krafchick Law Firm, Seattle, Washington, for the appellant.

David Levin, Drinker Biddle & Reath LLP, Washington, DC, for the appellee.

**OPINION**

PAEZ, Circuit Judge:

Plaintiff Jack Leeson ("Leeson"), a former employee of Defendant Transamerica Corporation ("Transamerica"), filed this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101, *et seq.*, to challenge the termination of his long-term disability benefits. The district court, applying an abuse of discretion standard of review, upheld the Transamerica Corporation Disability Income Plan's decision to terminate his benefits. Leeson appealed. In a prior disposition, we reversed the district court's grant of summary judgment to Transamerica and remanded with instructions to the district court to apply a de novo standard of review in determining whether Transamerica properly terminated Leeson's benefits. *Leeson v. Transamerica Disability Income Plan*, 279 F. App'x 563 (9th Cir. 2008).

On remand, Transamerica filed a motion to dismiss Leeson's action for lack of subject matter jurisdiction on the ground that Leeson did not have statutory standing as a plan participant to file suit under ERISA. Leeson, on the other hand, argued that he was a plan participant because he was employed at Transamerica at the time he applied for benefits. Leeson also stressed that Transamerica approved his claim and, in fact, paid him benefits for four years. The district court, relying on *Curtis v. Nevada Bonding Corp.*, 53 F.3d

1023 (9th Cir. 1995), concluded that Leeson was not a plan participant and granted Transamerica's motion to dismiss. The district court concluded that because Leeson lacked standing to pursue an ERISA claim, there was no federal subject matter jurisdiction. Leeson again timely appealed.

In this appeal, Leeson argues that the district court erroneously relied on our prior holding in *Curtis* to dismiss the case for lack of subject matter jurisdiction. In *Curtis*, we held that a district court lacked jurisdiction to consider an ERISA claim where a former employee "had neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits." *Id.* at 1027. Relying on a more recent decision, *Vaughn v. Bay Environmental Management, Inc.*, Leeson contends that, under ERISA, a "dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction." 567 F.3d 1021, 1024 (9th Cir. 2009). Leeson therefore argues that because he alleged a colorable claim for benefits, the district court had subject matter jurisdiction to address the merits of his case on remand.

For the reasons explained below, we agree with Leeson that *Vaughn* controls. Whether Leeson is a participant for purposes of ERISA is a substantive element of his claim, not a prerequisite for subject matter jurisdiction. As the Supreme Court has instructed, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006). To the extent our prior cases—including *Curtis*—hold otherwise, they have "no precedential effect" because they are precisely the type of "drive-by jurisdictional rulings" the Supreme Court has since rejected. *Id.* at 511 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998)). We therefore vacate the dismissal and remand for further proceedings.

# I

Leeson is a former employee of Transamerica. While employed there, he participated in Transamerica's long-term disability ("LTD") income plans. The Basic Plan, known as the Transamerica Corporation Disability Income Plan ("Basic Plan"), provided benefits based on a participant's pre-disability annual earnings up to $150,000. A second plan, known as the Transamerica Corporation Class 2 Long Term Disability Coverage Supplemental Plan ("Supplemental Plan"),[1] provided benefits on eligible pre-disability annual earnings over $150,000.

Leeson began working as a Regional Pension Manager for Transamerica in 1983. In December 1993, Leeson was in an automobile accident that resulted in injury to his neck and caused him to suffer severe headaches. Leeson continued to work until June 1996, at which time he took a leave of absence due to his deteriorating physical condition. Shortly thereafter, Leeson timely applied for LTD benefits under both the Basic and Supplemental Plans.

On April 1, 1997, Prudential Insurance Company of America ("Prudential"), as Claims Administrator, determined that Leeson was eligible for LTD benefits[2] and approved his application subject to "continuing evaluation of his claim."[3] Pru-

---

[1]The Basic Plan provided LTD benefits of 70 percent of the first $150,000 of eligible pre-disability annual earnings. The Supplemental Plan provided benefits on eligible pre-disability annual earnings over $150,000. Leeson's last eligible salary was $221,648.40, an amount which qualified him for benefits under the Supplemental Plan as well as the Basic Plan.

[2]After Leeson filed this case, Prudential, as Plan Administrator for the Supplemental Plan, settled Leeson's dispute over the allegedly improper termination of his Supplemental Plan benefits. As a result of this settlement, Leeson dismissed his claims against Prudential. Accordingly, unless otherwise noted, all further references to "long-term disability benefits," "LTD plan," or "LTD benefits" refer to the Basic Plan.

[3]At the time Leeson applied for benefits, Transamerica was the Plan Administrator for the Basic Plan. Prudential, however, was the Claims

dential paid Leeson LTD benefits until July 2, 2001, when it determined that he was no longer disabled within the meaning of the LTD plan.[4] In terminating Leeson's benefits, Prudential determined that the medical evidence no longer supported Leeson's claim that he suffered from a physical impairment that prevented him from returning to work. Prudential further concluded that, although Leeson may have suffered from an impairment that resulted from a psychological condition, the maximum benefits available for a mental impairment limitation had been exhausted.

Leeson appealed Prudential's decision to terminate his LTD benefits. Leeson disputed Prudential's interpretation of the medical evidence and requested that Prudential reinstate his benefits. In a letter dated October 19, 2001, Prudential affirmed its decision to terminate Leeson's benefits. The letter explained that Leeson's benefits were terminated because of the 24-month mental disorder limitation and because the medical evidence did not show that Leeson suffered from a physical disability that prevented him from working.

In February 2002, Leeson filed a second administrative appeal with the AEGON Committee, which had replaced Transamerica as the Plan Administrator.[5] Subsequently, on

Administrator. As Claims Administrator, Prudential made initial eligibility determinations, including review of first level appeals from the denial of benefits. If Prudential's appeals unit upheld the denial of benefits, the employee could appeal to the Transamerica Corporation Benefits Administration Committee.

[4]As we noted in our prior disposition, although Prudential determined that Leeson was no longer eligible for benefits under the Basic Plan, its termination letter quoted the definition of disability from the Supplemental Plan, not the Basic Plan. *See Leeson*, 279 F. App'x at 565.

[5]In 1999, AEGON USA, Inc., acquired Transamerica. As a result of this acquisition, the AEGON Committee replaced Transamerica as Plan Administrator. The AEGON Committee also assumed responsibility for second level appeals from the denial of benefits.

June 19, 2002, the AEGON Committee denied Leeson's appeal on the ground that he "d[id] not meet the definition of disability under the Plan that is applicable after the first 24 months of disability."

One year later, in August 2003, Leeson filed a second appeal with the AEGON Committee. The Committee denied this appeal, explaining that its June 19, 2002, decision was final. Having pursued his administrative remedies, Leeson filed this action pursuant to 29 U.S.C. § 1132(a)(1)(B) and invoked federal court jurisdiction pursuant to 29 U.S.C. § 1132(e)(1).[6]

Ruling on cross-motions for summary judgment, the district court granted Transamerica's motion on the ground that the termination of benefits did not constitute an abuse of discretion. In its ruling, the district court concluded that Transamerica did not breach its fiduciary duty under the then-existing standard recognized in *Atwood v. Newmont Gold Co.*, 45 F.3d 1317 (9th Cir. 1995), when it provided Leeson with a copy of the 1997 Restatement Plan that was in effect at the time Leeson's benefits were terminated, rather than the version of the plan in effect at the time Leeson became disabled and applied for benefits. The district court further concluded that Leeson received a full and fair administrative review, and that there was substantial evidence to support the determination that "[Leeson's] disability resulted from a mental condition."

---

[6]In his complaint, Leeson named Transamerica Corporation Disability Income Plan, Prudential Insurance Company of America, and AEGON Long Term Disability Plan as defendants. As a result of the settlement of Leeson's claim regarding benefits under the Supplemental Plan, Leeson dismissed Prudential as a defendant. Because Leeson was never a participant in the AEGON Plan, Leeson dismissed the AEGON Plan as a defendant. The only remaining defendant is the Transamerica Disability Income Plan. Although the final administrative decision was made by the AEGON Committee, the parties do not dispute that Transamerica Disability Income Plan is the proper defendant.

As noted above, Leeson appealed. In Leeson's first appeal, we held that, under our then-recent decision in *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006) (en banc), the district court erred in reviewing for abuse of discretion the decision to terminate Leeson's benefits. We remanded the case for further consideration under a de novo standard of review to determine whether Leeson was disabled under the terms of the 1997 Restatement Plan.[7] *Leeson*, 279 F. App'x at 567.

Transamerica never asserted in the administrative process, in the original district court proceeding, or in the prior appeal that Leeson was not a plan participant within the meaning of 29 U.S.C. § 1002(7). After our remand, however, Transamerica filed a Federal Rule of Civil Procedure 12(h)(3) motion to dismiss for lack of subject matter jurisdiction on the ground that Leeson did not qualify as a plan participant, and therefore lacked statutory standing to sue under ERISA. In support of its argument, Transamerica explained that after the remand, its newly retained counsel located relevant plan documents[8] that governed Leeson's eligibility for benefits. Under these LTD plan documents, Transamerica argued that Leeson was not a plan participant because he was on an unpaid leave of absence when he applied for benefits. Citing to the 1997 Restatement Plan, Transamerica argued that Section 3.3.4 expressly provided that "if an Eligible Employee is on an unpaid leave of absence, his or her status as a Long-Term Participant shall be suspended and he or she shall be ineligible for Long-Term Disability Benefits." Recognizing that it had

---

[7]Because Leeson was entitled to de novo review of the decision to terminate his benefits, we instructed the district court to reconsider Leeson's request to conduct discovery. *Leeson*, 279 F. App'x at 566-67. We also directed that "[i]n the absence of record evidence that Leeson's rights had vested under a prior plan, the Plan in effect when his claim was denied—the so-called 1997 Plan—governs his claim for benefits." *Id.* at 565 (citations omitted).

[8]Following our remand, Transamerica produced the 1988 and 1996 Summary Plan Descriptions, and the 1993 Restatement Plan.

not previously raised this standing issue, Transamerica argued that because the issue ultimately related to the district court's subject matter jurisdiction it could, under Rule 12(h)(3), raise the issue at any time. As noted above, Transamerica relied on our decision in *Curtis* to support its argument.

In opposing Transamerica's motion, Leeson submitted a series of three declarations, the second and third of which corrected typographical errors in the first declaration. In these declarations, Leeson declared that at the time he applied for LTD benefits, he was not on a leave of absence. In response to Transamerica's motion challenging the propriety of the later filed declarations, the district court struck them. As for the original declaration, the district court found that it was "self-serving" because it was made on "information and belief rather than personal knowledge," and was not signed under penalty of perjury. The district court ultimately concluded that Leeson's "self-serving declaration [did] not provide cognizable evidence that [he] was not on unpaid leave" when he applied for benefits.[9]

With this ruling, the district court found that Leeson was not a plan participant under 29 U.S.C. § 1132(a)(1)(B),[10] and therefore lacked statutory standing to pursue an ERISA claim. Accordingly, the district court granted Transamerica's motion to dismiss. In so ruling, the district court relied on *Curtis* to further conclude that because Leeson lacked statutory standing, federal court subject matter jurisdiction did not exist. Leeson timely appealed.

---

[9]In light of our disposition, we need not decide whether the district court erred in striking any of Leeson's declarations.

[10]29 U.S.C. § 1132(a)(1)(B) provides:

> (a) Persons empowered to bring a civil action. A civil action may be brought —
> (1) by a participant or beneficiary —
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . .

## II

We review de novo a dismissal for lack of subject matter jurisdiction. *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 968 (9th Cir. 1999). We also review de novo the district court's interpretation of ERISA. *See Spink v. Lockheed Corp.*, 125 F.3d 1257, 1260 (9th Cir. 1997).

## III

**[1]** Leeson, who filed this action pursuant to 29 U.S.C. § 1132(a)(1)(B), alleges that he was a participant in the Transamerica LTD plan and that federal jurisdiction existed under 29 U.S.C. § 1132(e)(1).[11] Transamerica contends that the district court lacked subject matter jurisdiction because Leeson was not a plan participant as required by § 1132(a)(1)(B). As Transamerica correctly notes, the Supreme Court has explained that "[t]he express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties . . . ." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 (1983) (concluding that the district court lacked subject matter jurisdiction over a lawsuit brought by state tax authorities for a declaratory judgment involving an ERISA-covered employee benefit plan). Participants are among those parties expressly entitled to bring suit under ERISA. 29 U.S.C. § 1132(a)(1)(B). Thus, the question presented in this appeal is whether the challenge to Leeson's status as a plan participant implicates federal court subject matter jurisdiction,

---

[11]29 U.S.C. § 1132(e)(1) provides:

(e) Jurisdiction
(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, [or] fiduciary. . . . State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

or the substantive adequacy of Leeson's claim. Our prior case law has undoubtedly contributed to the conflation of these two distinct concepts. This appeal provides us with an opportunity, in light of the Supreme Court's decision in *Arbaugh*, to clarify that *Vaughn* sets forth the correct rule.

We begin by recognizing that federal courts have broad adjudicatory authority over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Because of this extensive power, jurisdictional dismissals in actions predicated on federal questions are "exceptional." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (quoting *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 140 (9th Cir. 1983)). In *Bell v. Hood*, one of the seminal decisions addressing the contours of subject matter jurisdiction, the Supreme Court held that a claim alleged to arise under federal law should not be dismissed for lack of subject matter jurisdiction if "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." 327 U.S. 678, 685 (1946). Consequently, a federal court may dismiss a federal question claim for lack of subject matter jurisdiction only if: (1) "the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction"; or (2) "such a claim is wholly insubstantial and frivolous." *Id.* at 682-83.

Although seemingly clear in theory, our analysis of subject matter jurisdiction has been substantially more complicated in practice. Strictly speaking, "subject-matter jurisdiction" concerns "the courts' statutory or constitutional *power* to adjudicate" cases. *Steel Co.*, 523 U.S. at 89; *see also Henderson ex rel. Henderson v. Shinseki*, ___ U.S. ___, 131 S. Ct. 1197, 1202 (2011) ("[U]rg[ing] that a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction.").

The Supreme Court, however, has observed that the term " '[j]urisdiction' . . . 'is a word of many, too many, meanings.' " *Arbaugh*, 546 U.S. at 510 (quoting *Steel Co.*, 523 U.S. at 90). According to the Court, federal courts have "sometimes been profligate in [their] use of the term." *Id.* Indeed, we "have sometimes mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations, particularly when that characterization was not central to the case, and thus did not require close analysis." *Reed Elsevier, Inc. v. Muchnick*, ___ U.S. ___, 130 S. Ct. 1237, 1243-44 (2010). These cases, which the Supreme Court has referred to as "drive-by jurisdictional rulings" due to their cursory analysis, have "no precedential effect." *Arbaugh*, 546 U.S. at 511 (quoting *Steel Co.*, 523 U.S. at 91).

Acknowledging the muddled state of the case law, the Supreme Court in *Arbaugh* squarely addressed the lack of precision used by federal courts in analyzing the "subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy."[12] *Id.* at 511. After the trial court entered judgment on a jury verdict in favor of an employee in an action involving Title VII of the Civil Rights Act of 1964, the employer brought a motion challenging subject matter jurisdiction. *Id.* at 503-04. Although the trial court noted the waste of judicial resources caused by the delay in asserting such a challenge, the trial court dismissed the action because it concluded that Title VII's 15-employee requirement was a jurisdictional prerequisite. *Id.* at 504. The Supreme Court reversed, holding that

---

[12]This is a significant distinction with dispositive consequences. Subject matter jurisdiction "can never be forfeited or waived" and federal courts have a continuing "independent obligation to determine whether subject-matter jurisdiction exists . . . ." *Arbaugh*, 546 U.S. at 514 (internal quotation marks and citation omitted). Whereas a trial judge may resolve factual disputes related to subject matter jurisdiction, a trier of fact is responsible for resolving contested facts concerning an essential element of a claim. *Id.* Additionally, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety[,]" including pendant state law claims. *Id.*

Title VII's employee numerosity limitation is not a jurisdictional requirement; therefore, it cannot be raised defensively in a post-trial motion. *Id.* The Court reasoned that the limitation related to the substantive adequacy of a Title VII claim because "the 15-employee threshold appears in a separate provision that 'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.' " *Id.* at 515 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). The Court articulated a bright line rule:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue . . . [b]ut when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id.* at 515-16 (footnote omitted).

In *Reed Elsevier*, the Supreme Court further examined the scope of federal court subject matter jurisdiction, this time with respect to the Copyright Act. The Court concluded that § 411(a) of the Copyright Act, which requires copyright registration of original works of authorship, "is a precondition to filing a claim that does not restrict a federal court's subject matter jurisdiction." 130 S. Ct. at 1241. In so holding, the Supreme Court applied the same approach that it followed in *Arbaugh*. The Court explained that § 411's registration requirement "is not clearly labeled jurisdictional, is not located in a jurisdiction-granting provision, and admits of congressionally authorized exceptions." *Id.* at 1247. Therefore, it is properly construed as a claim-processing rule.

The Supreme Court again endeavored to clarify the distinction between jurisdictional prerequisites and claim-processing rules in *Shinseki*. There, the Court held that a 120-day dead-

line for filing a notice of appeal with the Court of Appeals for Veterans' Claims does not have "jurisdictional" consequences. *Shinseki*, 131 S. Ct. at 1200. The Court concluded that the relevant provision "does not speak in jurisdictional terms," the provision is located in a completely separate subchapter entitled "Procedure," and construing the provision to restrict veterans' benefits is inconsistent with the pro-veteran administrative scheme. *Id.* at 1204-06.

With the benefit of recent Supreme Court precedent, we examined the scope of federal court subject matter jurisdiction arising from claims involving the Individuals with Disabilities Education Act ("IDEA"). *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863 (9th Cir. 2011) (en banc). Because the plaintiffs had not first sought relief through an administrative due process proceeding, the district court dismissed their IDEA claims for lack of subject matter jurisdiction. *Id.* at 866. Overturning our previous cases to the contrary, we held that the IDEA's exhaustion requirement is an affirmative defense, not a jurisdictional requirement. *Id.* at 870-71. Three factors —derived from recent Supreme Court cases—guided our analysis. First, the provision "is not clearly labeled jurisdictional." *Id.* at 870 (quoting *Reed Elsevier*, 130 S. Ct. at 1247). Second, it "is not located in a jurisdiction-granting provision." *Id.* at 870-71 (quoting *Reed Elsevier*, 130 S. Ct. at 1247). Finally, no other reasons necessitated that the provision be construed as jurisdictional. *Id.* at 870.

With that framework in mind, we return to the federal statute currently before us. ERISA authorizes a participant or beneficiary to initiate a civil action in state or federal court to recover benefits, enforce his or her rights, or clarify his or her rights under the terms of an ERISA plan. 29 U.S.C. §§ 1132(a)(1)(B), (e)(1). A separate section entitled "Definitions" provides that:

> [t]he term "participant" means any employee or former employee of an employer, or any member or

former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). The Supreme Court has interpreted § 1002(7) to include a former employee who has "a colorable claim that . . . she will prevail in a suit for benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989). Because federal jurisdiction existed in *Firestone Tire*, the Court did not have occasion to explore the contours of participant status and ERISA subject matter jurisdiction.

**[2]** In *Vaughn*, a former employee alleged that he was entitled to lost benefits caused by his employer's breach of the fiduciary duty to invest prudently the assets of a defined contribution pension plan. 567 F.3d at 1023. Vaughn's employer argued that Vaughn lacked statutory standing because he had failed to allege sufficient facts to satisfy ERISA's definition of the term "participant." *Id.* at 1024. The district court dismissed the action for lack of subject matter jurisdiction. *Id.* On appeal, we held that "a dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction." *Id.* In so holding, we relied on two cases from our sister circuits that addressed the issue. *See id.* (citing *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1221-22 (11th Cir. 2008) (concluding that statutory standing under ERISA involves the merits of the action, not subject matter jurisdiction) and *Harzewski v. Guidant Corp.*, 489 F.3d 799, 803-04 (7th Cir. 2007) ("Except in extreme cases . . . , the question whether an ERISA plaintiff is a 'participant' entitled to recover benefits under the Act should be treated as a question of statutory interpretation fundamental to the merits of the suit rather than a question of the plaintiff's right to bring the suit.")).

**[3]** In *Harris v. Amgen, Inc.*, former employees of Amgen, Inc. initiated an action against Amgen, Inc.'s directors and officers for breach of their fiduciary duties in the operation of two ERISA retirement plans. 573 F.3d 728, 731 (9th Cir. 2009). The district court concluded that one of the employees lacked statutory standing as a plan participant because he had withdrawn his assets from the plan. *Id.* Citing *Vaughn*, we again reiterated that whether a plaintiff has statutory standing in an ERISA action is a merits-based determination, not a subject matter jurisdiction issue. *Id.* at 732 n.3.

**[4]** After surveying recent Supreme Court precedent and examining the relevant provision, we conclude that *Vaughn* and its progeny reached the correct outcome. We recognize that several of our cases prior to *Vaughn* treated participant status as a prerequisite to subject matter jurisdiction. *See Freeman v. Jacques Orthopaedic & Joint Implant Surgery Med. Grp., Inc.*, 721 F.2d 654, 655-56 (9th Cir. 1983) (holding that the district court lacked subject matter jurisdiction because the plaintiff was not a participant in the plan as defined in § 1002(7)); *Harris v. Provident Life Accident Ins. Co.*, 26 F.3d 930, 934 (9th Cir. 1994) (concluding that "a federal court has no jurisdiction to hear a civil action under ERISA that is brought by a person who is not a 'participant, beneficiary, or fiduciary.' " (quoting *Franchise Tax Bd.*, 463 U.S. at 27)); *Curtis*, 53 F.3d at 1027 (holding that "a plaintiff's standing under section 1132(a)(1) is a prerequisite to ERISA jurisdiction."). Applying the approach set forth in *Arbaugh*, however, we conclude that these cases failed to adequately consider the "critical difference[s] between true jurisdictional conditions and nonjurisdictional limitations on causes of action . . . ." *Reed Elsevier*, 130 S. Ct. at 1244 (internal quotation marks and citations omitted) (alteration in original). In deciding these cases, our court did not have the benefit of the Supreme Court's clarification on the proper scope of jurisdictional rulings as articulated in *Shinseki*, *Reed Elsevier*, and *Arbaugh*. Accordingly, in light of *Vaughn*, they

represent the type of "drive-by jurisdictional rulings" that lack any precedential weight. *Arbaugh*, 546 U.S. at 511.

First, the only limitation to invoking federal court jurisdiction under § 1132(a)(1)(B) relates to the categories of individuals entitled to initiate a civil action in state or federal court. *Franchise Tax Bd.*, 463 U.S. at 21. As explained above, participants are among those parties authorized to bring suit under ERISA. 29 U.S.C. § 1132(a)(1)(B). Like Title VII's employee numerosity requirement, the definition of "participant" "appears in a separate provision that 'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.' " *Arbaugh*, 546 U.S. at 515 (quoting *Zipes*, 455 U.S. at 394). Section 1002(7) serves to identify those plaintiffs who may be entitled to relief, not to limit the authority of federal courts to adjudicate claims under ERISA.

Second, nothing in the jurisdiction-conferring provision requires that a plaintiff must assert anything more than a colorable claim that he or she is a participant in order to assert a claim under ERISA. Our earlier cases imported an additional requirement—that a plaintiff must also actually prove that he or she is a participant to obtain access to federal court. In light of *Arbaugh*, however, "we are reluctant to infer such a restriction where Congress has not made it explicit." *Payne*, 653 F.3d at 870.

**[5]** Finally, we can discern no other reason for importing § 1002(7)'s definitions into ERISA's jurisdiction-conferring provisions. To conclude otherwise would contravene clearly established precedent. *Bell*, 327 U.S. at 685 (explaining that "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another."). If the district court concludes that Leeson is a plan participant, he may be entitled to relief. If, on the other hand, the district court concludes that Leeson is not a plan participant, his claim fails. *See* 29 U.S.C.

§ 1132(a)(1)(B). Because Leeson's ERISA claim rises and falls on the district court's determination of participant status, the construction of the term "participant" involves a merits-based determination, even if it results in a dismissal. As a result, he has a "right" to bring suit in federal court. *Bell*, 327 U.S. at 685.

**[6]** We recognize that this conclusion requires us to overrule our prior statements to the contrary. This is appropriate because the current case falls within one of our exceptions to the general rule that a three-judge panel may not overrule a prior three-judge panel opinion. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). We have held:

> that in circumstances . . . where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled.

*Id.* at 893. We have also specifically noted that drive-by jurisdictional rulings lack precedential force. *See Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 554 (9th Cir. 2003) ("[W]e would not give precedential effect to a 'drive-by' jurisdictional determination by our or a higher court . . . ." (quoting *Steel Co.*, 523 U.S. at 91)); *Bell v. Bonneville Power Admin.*, 340 F.3d 945, 952 (9th Cir. 2003) ("'[D]rive-by jurisdictional rulings' are not precedential." (quoting *Steel Co.*, 523 U.S. at 91)). In light of the above discussion, intervening Supreme Court precedent compels us to conclude that participant status is an element of an ERISA claim, not a jurisdictional limitation. Therefore, the reasoning applied in *Arbaugh*, *Reed Elsevier*, and *Shinseki* requires us to overrule *Freeman*, *Harris v. Provident Life Accident Insurance Co.*, and *Curtis*, to the extent that they held that participant status as defined

in § 1002(7) is a prerequisite to federal court subject matter jurisdiction.

**[7]** Accordingly, we conclude that the district court erroneously dismissed Leeson's case for lack of subject matter jurisdiction. By asserting a colorable claim that he is a plan participant, Leeson has satisfied the threshold for establishing federal court subject matter jurisdiction. The issue of participant status goes to the merits of his claim and not to the subject matter jurisdiction of the district court. In this context, the district court should not have attempted to resolve the issue of participant status when ruling on Transamerica's motion to dismiss under Rule 12(h)(3). Rather, because Leeson's participant status relates to the merits of his claim, the district court should have addressed it at the summary judgment stage or at trial.

**IV**

On remand, as we directed in our prior disposition, unless the district court determines that another plan applies, it shall apply the 1997 Restatement Plan. Further, if the district court determines that Leeson was a plan participant, it shall comply with our prior mandate and review de novo whether Transamerica improperly terminated Leeson's LTD benefits under the 1997 Restatement Plan (or other governing plan, as determined by the district court). In light of the limited nature of our holding, Leeson is not foreclosed from raising the equitable principles of estoppel and waiver to bar Transamerica's challenge to his eligibility as a plan participant. Leeson is likewise free to argue that Transamerica is foreclosed from raising an entirely new eligibility argument, when it failed to do so in the administrative process. We express no views on the merits of any of these issues.

VACATED and REMANDED.

Leeson shall recover his costs on appeal.