**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

VORRIS BLANKENSHIP,
            *Plaintiff-Appellee,*

v.

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON, as
Administrator and Fiduciary of the
KPMG Employee Long-term
Disability Plan and the KPMG
Employee Long-term Disability
Plan,
            *Defendant-Appellant.*

No. 05-15077

D.C. No.
CV-03-01132-SC

OPINION

Appeal from the United States District Court
for the Northern District of California
Samuel Conti, District Judge, Presiding

Argued and Submitted
November 13, 2006—San Francisco, California

Filed May 18, 2007

Before: William C. Canby, Jr., John T. Noonan, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Paez;
Concurrence by Judge Noonan

## COUNSEL

Mark G. Bonino, Pamela E. Cogan, Kathryn C. Curry, Elisa Nadeau, San Jose, California, for the defendant-appellant.

Scott Calkin, San Francisco, California, for the plaintiff-appellee.

# OPINION

PAEZ, Circuit Judge:

Liberty Life Assurance Company of Boston ("Liberty Life") appeals the district court's award of disability benefits to Vorris Blankenship, following a court trial on his claims under the Employment Retirement Income Security Act ("ERISA") § 502(a)(1)(B) and § 502(a)(3). 29 U.S.C. § 1132(a). Liberty Life does not challenge the district court's ruling that Blankenship was entitled to long-term disability benefits. Instead, Liberty Life argues that the disability benefits owed Blankenship should have been reduced by the amount of retirement benefits transferred to his Individual Retirement Account ("IRA") upon his retirement. Liberty Life also challenges the use of a 10.01-percent interest rate to calculate prejudgment interest. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTS & PROCEDURAL HISTORY

The facts are not in dispute. Vorris Blankenship, an attorney employed by KPMG LLP ("KPMG"), developed cancer. He suffered severe complications as a result of his medical treatment. Blankenship's treating physician informed him that, although he could undergo surgery to attempt to improve his situation, it was not advisable because the surgery could cause further complications and exacerbate his condition.

Liberty Life, administrator and fiduciary of the KPMG Employee Long-Term Disability Plan ("Disability Plan"), of which Blankenship was a member, initially determined in June 1998 that Blankenship qualified for long-term disability benefits under the Disability Plan. However, on April 20, 2000, Liberty Life sent Blankenship a letter informing him that his benefits would be terminated because it had determined that there were alternative treatments that could improve his condition. Blankenship appealed the decision to

Liberty Life. Five months later, in September 2000, Liberty Life rejected Blankenship's appeal, reaffirming its prior decision to terminate benefits, and adding additional reasons for the determination. Liberty Life also informed Blankenship that he had exhausted his administrative remedies and that its decision was final.

On September 13, 2000, KPMG terminated Blankenship, who was 64 at the time, for failure to return to work. Upon termination, Blankenship became eligible to receive retirement benefits from several of his retirement plans with KPMG. In a written letter, KPMG informed Blankenship of his options for distribution of these benefits. The KPMG Pension Plan offered the benefits as either a joint and survivor annuity for the lives of Blankenship and his spouse or as a lump-sum payment. The lump-sum payment could be distributed directly to Blankenship, or he could elect to "roll it over into an IRA or other tax qualified vehicle." The KPMG Personal Account for Retirement ("PAR Plan"), a defined-contribution plan in which the employer contributed an amount equal to 1.5 percent of Blankenship's salary each year, also allowed for an annuity, a lump-sum payment, or a lump-sum direct rollover to an IRA, with the additional options of payment in monthly installments or deferred distribution of the funds until Blankenship reached the age of 70½.

Blankenship chose to roll over both accounts directly into an IRA managed by the Vanguard Fiduciary Trust Company ("Vanguard"). On December 11, 2000, KPMG transferred $29,291, representing the amount in Blankenship's Pension Plan account, to his Vanguard IRA. On January 9, 2001, KPMG transferred $761,149, the amount in Blankenship's PAR Plan account, to the Vanguard IRA. The Disability Plan requires that "other income benefits" be deducted from the total monthly disability benefit paid to the insured. These other income benefits are defined to include "[t]he amount of benefits the insured *receives* under the employer's retirement plan as follows: (a) any disability benefits; (b) any retirement

benefits." (emphasis added). "Retirement benefits" are defined as money from a retirement plan[1] which:

> (1)  is payable under a retirement plan either in a lump sum or in the form of periodic payments;
>
> (2)  does not represent contributions made by an employee . . . ; and
>
> (3)  is payable upon:
>
>> (a)  early or normal retirement; or
>>
>> (b)  disability if the payment does not reduce the amount of money which would have been paid at the normal retirement age under the plan if the disability had not occurred.

Blankenship sued Liberty Life and the Disability Plan to recover benefits under ERISA § 502(a)(1)(B) and appropriate equitable relief under ERISA § 502(a)(3). *See* 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). The parties agreed, as did the district court, that the court should apply a de novo standard of review in determining whether Blankenship was entitled to disability benefits because the Disability Plan did not give "the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (discussing standards of review to be used by courts in reviewing cases in which ERISA-covered plan administrators have denied benefits). Following a court trial, the court issued Findings of Fact and Conclusions of Law, which it subsequently

---

[1]Both parties agree that the Pension and PAR Plans fall within the definition of "retirement plan" under the Disability Plan.

amended. The district court found that Blankenship was "totally disabled" under the terms of the Disability Plan and entitled to an award of benefits, attorney's fees, costs, and prejudgment interest. The district court also determined that Liberty Life was not entitled to reduce the benefits owed by the amount of outside retirement benefits transferred to Blankenship's IRA because these benefits were not "received" by Blankenship as required by the Disability Plan. The court based its ruling on: (1) the text of the Disability Plan; (2) the distinction in the Internal Revenue Code ("IRC") between a trustee-to-trustee transfer (a "direct rollover") and a 60-day rollover; (3) the plain meaning of the word "receives"; and (4) the policy behind the Age Discrimination in Employment Act ("ADEA") provision which permits employers to offset long-term disability benefits with pension benefits. The court entered judgment in favor of Blankenship in the amount of $325,451.28, which included prejudgment interest at a rate of 10.01 percent, attorney's fees, and costs.

Liberty Life does not appeal the district court's determination that Blankenship was entitled to long-term disability benefits. Instead, Liberty Life argues that the disability benefits owed Blankenship should have been reduced by the retirement benefits from the Pension and PAR Plans. Liberty Life also appeals the interest rate used to calculate prejudgment interest.

## DISCUSSION

### A.

We first address Liberty Life's challenge to the district court's ruling that it is not entitled to deduct the long-term disability payments due Blankenship by the retirement benefits transferred to Blankenship's IRA at Vanguard. The Disability Plan requires that "other income benefits" be deducted from the total monthly disability benefit payments paid to the insured. These other income benefits are defined to include

"[t]he amount of benefits the insured *receives* under the employer's retirement plan as follows: (a) any disability benefits; (b) any retirement benefits." (emphasis added). The issue here is whether Blankenship "received" his retirement funds when they were transferred to his Vanguard IRA under the terms of the Disability Plan.

We review de novo a district court's determinations regarding the text of an ERISA plan, including whether plan terms are ambiguous. *Cisneros v. UNUM Life Ins. Co. of Am.*, 134 F.3d 939, 942 (9th Cir. 1998); *see also Metropolitan Life Ins. Co. v. Parker*, 436 F.3d 1109, 1113 (9th Cir. 2006) (citing *Cisneros*, 134 F.3d at 942).

**[1]** We begin by recognizing that the term "receives" is not defined in the Disability Plan. On appeal, both parties accept the term "receive" to mean "to take into possession or control," with Blankenship focusing on the possession aspect, arguing that it means "to accept custody of; collect." However, a definition of receipt based on possession and one based on control may lead to two separate outcomes. Thus, when considered in the context of the Disability Plan, the term "receives" is ambiguous. We therefore apply the rule of *contra proferentem*, and we conclude that it supports the district court's determination.

**[2]** *Contra proferentem*, which is recognized by federal common law and the law of every state and the District of Columbia, *see Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 538-40 (9th Cir. 1990), holds that "if, after applying the normal principles of contractual construction, the insurance contract is fairly susceptible of two different interpretations, another rule of construction will be applied: the interpretation that is most favorable to the insured will be adopted." *Id.* at 539. The rule applies in interpreting ambiguous terms in an ERISA-covered plan except where the plan: (1) grants the administrator discretion to construe its terms, (2) is the result of a collective-bargaining agreement, or (3) is self-funded.

*See Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 554 (9th Cir. 1995); *Eley v. Boeing Co.*, 945 F.2d 276, 279-80 (9th Cir. 1991); *Kunin*, 910 F.2d at 540. None of these exceptions apply here. Applying *contra proferentem*, we construe the term "receives" to mean possession through actual receipt of funds.

[3] This interpretation is buttressed by the terms of the Disability Plan. As discussed above, the Disability Plan requires that "other income benefits" be deducted from the total monthly disability benefits paid to the insured. "Other income benefits" is defined to include two categories of benefits: those which an insured "receives," and those for which an employee is "eligible." The latter category includes benefits under workers' compensation, occupational disease, and other related laws, disability income benefits under any other group insurance plan of the employer, and benefits under a governmental retirement system as a result of the job with the employer. The fact that the Disability Plan reduces disability benefits based on eligibility for certain types of payments, without requiring evidence that the individual received the payments or even applied for them, supports the conclusion that, where the Disability Plan requires a deduction of benefits because of funds "received," the term is properly read to mean funds that actually come into the possession of the insured.

[4] Blankenship elected to have the retirement funds directly rolled over into his Vanguard IRA. We hold that, under these circumstances, Blankenship did not obtain possession of his retirement funds.[2] We base this determination on Vanguard's status as a trustee under the IRC and the fact that Blankenship's funds were transferred from KPMG to his Van-

---

[2]It is undisputed by the parties that had Blankenship elected to directly receive the benefits, whether in the form of an annuity, monthly installments, or a lump-sum payment, the Disability Plan benefits owed Blankenship would have been reduced accordingly.

guard IRA through a trustee-to-trustee transfer. *See* 26 U.S.C. §§ 401(a)(31)(A), 402(e)(6), 408(a).

**[5]** Liberty Life argues that Vanguard is more properly designated as an agent than as a trustee for the purposes of determining its role in receiving Blankenship's retirement funds. According to Liberty Life, if Vanguard is acting as a mere agent, the transfer to the IRA would constitute receipt by Blankenship through Vanguard. In our view, however, if Vanguard is properly characterized as a trustee, the funds are no more in Blankenship's possession than they were before the transfer, and possession would be gained only at the time the funds were withdrawn from the IRA. In the latter circumstance, the transfer of funds to Vanguard would not constitute actual receipt within the meaning of the Disability Plan.

**[6]** Vanguard, in this context, lacks most of the traditional powers and responsibilities that characterize a trustee. It is Blankenship who directs the investment choices, Blankenship who controls the flow of funds in and out of the account, and Blankenship who can at any time terminate the account. Nonetheless, an IRA established in accordance with IRC § 408(a) constitutes a special type of trust account, in which the custodian of the account must fulfill particular obligations and must conform to certain restrictions. *See* 26 U.S.C. § 408(a). The custodian, acting as a trustee, must ensure that contributions to the account are made in cash; that the contributions not exceed the amount the individual is permitted to contribute each year; that the funds not be commingled with other property except in a common trust or investment fund; that the funds not be invested in life insurance contracts; and that the interest of an individual in the balance of his or her account be nonforfeitable. *See id.* It is compliance with these requirements that establishes the custodian of a IRA as a trustee.[3]

---

[3]The IRC further supports the conclusion that Blankenship did not receive the retirement funds through the direct rollover: under IRC § 402(a), a disbursal from an employee trust is taxable only if it is "actu-

**[7]** Liberty Life argues that the IRS's categorization of the transfer to a trustee account has no bearing on whether the funds were "received" by Blankenship. However, the IRC is clearly relevant; it provides the backdrop for Liberty Life's arguments. That is, Liberty Life argues that Blankenship possessed and controlled his retirement funds because at the time the funds were transferred to Vanguard, Blankenship was over the age of 59½ and was therefore permitted under the IRC to withdraw money from his IRA without an early-withdrawal penalty. *See* 26 U.S.C. § 72(t)(2)(A)(i). This argument implies that if Blankenship were under the age of 59½ at the time the funds were transferred into his Vanguard account, the 10 percent penalty for early withdrawal would create a restriction on the account that limited his possession and control of the funds.[4] *See* 26 U.S.C. § 72(t)(1). Thus, the

---

ally distributed" to the employee. *See* 26 U.S.C. § 402(a). However, a trustee-to-trustee transfer in which the employer plan distributes funds directly to the employee's IRA is exempt from taxation. *See* 26 U.S.C. §§ 401(a)(31)(A), 402(e)(6). In contrast, a 60-day rollover transfer, in which the plan distributes funds directly to the employee, requires the withholding of 20 percent of the proceeds for tax purposes. *See* 26 U.S.C. §§ 402(c)(3), 3405(c). Under a 60-day rollover, the employee receives the funds, maintaining control over them, but he must transfer some or all of the funds to an IRA within 60 days to avoid income tax on the transferred funds. *See* 26 U.S.C. § 402(c)(3).

[4]Blankenship's age cannot be overlooked. Our holding is consistent with the policy purposes behind the ADEA safe harbor, § 4(*l*)(3)(B), which is the statutory authority for an employer-provided disability plan to reduce payments paid to an employee by pension benefits despite the age-based impact of such a plan provision. *See* 29 U.S.C. § 623(*l*)(3) (permitting an employer-sponsored plan to reduce disability benefits by pension benefits "(A) paid to the individual that the individual voluntarily elects to receive; or (B) for which an individual who has attained the later of age 62 or normal retirement age is eligible."). As explained in *Kalvinskas v. California Institute of Technology*:

> [The] legislative history demonstrates that the purpose of § 4(*l*)(3)(B) was to prevent an employee from receiving the windfall of simultaneous payments of long-term disability and pension

IRC defines the relationship between an IRA account holder and the custodian/trustee of the account through the duties and obligations it imposes on each, and is directly relevant to our analysis. *See id.*; 26 U.S.C. § 408(a). Vanguard was not a mere agent for Blankenship, but was a trustee as established under the IRA provisions of the Internal Revenue Code. We therefore conclude that Blankenship did not obtain possession of his retirement funds through the trustee-to-trustee transfer from KPMG to Vanguard.

**[8]** Although we hold that under the doctrine of *contra proferentem*, the definition of receipt is one that requires possession, we also note that Blankenship did not gain any additional authority to control his retirement funds through the transfer to the Vanguard IRA. Liberty Life acknowledged at oral argument before this court that if Blankenship had elected upon retirement to defer distribution of his funds by leaving them in his KPMG account, he would not have "received" the funds under the terms of the Disability Plan. There is no significant difference, however, between Blankenship electing to keep the funds in KPMG's care through deferred distribution and electing to transfer the funds to the Vanguard IRA. In both instances, Blankenship could choose to take out some or all of the money without penalty; in both instances, the money belonged to Blankenship and would be held for him by a trustee. As the district court explained:

---

benefits in full. In other words, Congress created § 4(*l*)(3)(B) to permit employers to offset disability benefits by pension benefits when necessary to avoid double payments.

96 F.3d 1305, 1309 (9th Cir. 1996) (holding that an employer violated the ADEA's prohibition of involuntary retirement by reducing an employee's disability benefits by the pension benefits the employee could only receive by retiring, effectively coercing him to retire). We agree with the district court that the policy of avoiding "double dipping," that is, receiving two independent benefit payments at once, did not apply here. By electing to directly roll over his retirement benefits into an IRA, Blankenship deferred collecting additional income during the relevant time period, avoiding concurrent income streams.

> Blankenship did not receive anything through this transfer. He did not receive the funds as income, nor did he obtain the use and enjoyment of the funds. Although Blankenship has beneficial ownership of the funds in the Vanguard IRA, as well as the rights to obtain those funds and appoint a beneficiary of them, he similarly possessed these rights and benefits when the funds were held by the KPMG plans, and therefore cannot be said to have received anything in the transaction.

Thus, the fact that Blankenship could withdraw the retirement funds distributed into his Vanguard IRA did not change Blankenship's ability to control his funds.

[9] Because Blankenship had the same type of possession (and control) of the funds once transferred into the Vanguard account that he would have had were the funds left with KPMG, he did not "receive" these funds for the purposes of offset under the Disability Plan. Therefore, the district court properly concluded that Blankenship's award of disability benefits was not subject to reduction based on the distribution of his retirement benefits under the PAR and Pension Plans.

## B.

[10] A district court may award prejudgment interest on an award of ERISA benefits at its discretion. *See, e.g.*, *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001); *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163-64 (9th Cir. 2001); *Blanton v. Anzalone*, 813 F.2d 1574, 1575 (9th Cir. 1987). Generally, "the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." *Grosz-Salomon*, 237 F.3d at 1164 (quoting *Nelson v. EG & G Energy Measurements Group, Inc.*, 37 F.3d 1384, 1391 (9th

Cir. 1994)). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blanton*, 813 F.2d at 1576 (holding that district court abused its discretion by awarding, on an ERISA award, a prejudgment interest rate below the Treasury bill rate without making a finding as to the equities which justified the departure) (citations omitted). The court may compensate a plaintiff for "the losses he incurred as a result of [the defendant's] nonpayment of benefits." *Dishman*, 269 F.3d at 988 (holding that the district court abused its discretion in awarding a 16 percent prejudgment interest rate on an ERISA award — double the rate of return on the defendant's investment portfolio — because "[p]rejudgment interest is an element of compensation, not a penalty").

**[11]** Here, the district court determined that prejudgment interest was necessary to compensate Blankenship. The court deviated from the standard Treasury bill rate, awarding a 10.01-percent rate. In doing so, the court made factual findings necessary to support the deviation. The court cited Blankenship's declaration that as a result of Liberty Life's nonpayment of benefits, Blankenship was forced to replace the $6,093.82 per month he would have received with his own personal funds. Those funds would otherwise have been invested in a Vanguard mutual fund in which he had already invested over one half million dollars, and which had a 10.01-percent return since its inception in June 2000. Based on this factual record, the court concluded that "in order for Blankenship to be adequately compensated for Liberty's wrongful nonpayment of benefits," it was awarding prejudgment interest at a rate of 10.01 percent, compounded monthly. These factual findings are supported by the record, and are adequate to satisfy the "substantial evidence" requirement. Therefore, the district court did not abuse its discretion in awarding prejudgment interest at a rate that exceeded the standard Treasury bill rate.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

NOONAN, Circuit Judge, concurring:

By the principles of law distinguishing trusteeship and agency, Vanguard was an agent, not a trustee. The restrictions on Vanguard's power of investment imposed by the Internal Revenue Code 26 U.S.C. § 408(a), however, infringe on Blankenship's control as does the provision in the same statute that the balance of his account be nonforfeitable. If Vanguard were his agent, Blankenship would be free to invest the account as he chose, and he could not confer upon it a nonforfeitable status. Because of these peculiarities of the position of Vanguard — peculiarities owed to the Internal Revenue Code — Vanguard does not completely meet the criteria of agency, and, therefore, Blankenship prevails in this case.